UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUKE ROMERO,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>    Defendants. | Case No. 11-cv-04812-WHO<br><br>**ORDER STRIKING PLAINTIFF'S CLAIM FOR MONELL LIABILITY IN THE THIRD CAUSE OF ACTION, GRANTING DEFENDANTS' MOTIONS TO QUASH SUBPOENA AND PRECLUDE WITNESSES, AND DENYING AS MOOT DEFENDANTS' MOTION FOR CLARIFICATION**<br><br>Re: Dkt. Nos. 143, 153, 162 |

This order disposes of several issues raised by the parties in anticipation of the employment retaliation trial set for October 6, 2014.

## I. MONELL LIABILITY

On September 12, 2014, defendants filed a motion for clarification and several motions in limine regarding plaintiff Luke Romero's claims against the County of Santa Clara for First Amendment retaliation in violation of 42 U.S.C. § 1983. Dkt. Nos. 137, 143. The thrust of the motions is that Romero has not properly alleged or provided sufficient evidence to support section 1983 liability against the County under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and that, therefore, Romero should not be allowed to present his *Monell* claims at trial. *See* Dkt. Nos. 137, 143. Romero's third amended complaint, the operative complaint in this case, includes a *Monell* allegation, but it consists of only two boilerplate sentences and is not sufficient to state a claim for relief against the County.[1] *See* TAC ¶ 77 (Dkt. No. 64). However,

---

[1] The *Monell* allegation states in whole: "Defendants' actions and failures as alleged above constitute a pattern, practice and custom of violations of the Civil Rights Laws of the United States, 42 U.S.C. § 1983. Defendants, while acting under color of state authority and law, wrongfully and intentionally discriminated and retaliated against plaintiff because he exercised his First Amendment righ[t] of free speech under the United States Constitution by making

defendants did not move to dismiss Romero's *Monell* claims or contest them at summary judgment. *See, e.g.,* Dkt. Nos. 85, 106. Defendants' recent motions are the first time in this case that Romero's *Monell* claims have been squarely addressed.

After hearing argument from the parties at the initial pretrial conference on September 22, 2014, I instructed Romero to make an offer of proof demonstrating to the Court the evidence that he would present at trial in support of *Monell* liability. *See* Dkt. No. 155. Romero submitted the offer on September 30, 2014. Dkt. No. 158 ("Offer").

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A district court may also grant judgment on the pleadings sua sponte, so long as the court provides the parties with an opportunity to be heard before the judgment is entered. *See Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982); Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide Fed. Civ. Pro. Before Trial ¶ 9:329 (The Rutter Group 2014) ("As long as both parties have the opportunity to be heard, the legal sufficiency of the complaint may also be raised by the court sua sponte, and judgment entered accordingly."). The Rule 12(c) analysis is "substantially identical" to the Rule 12(b)(6) analysis; under both rules, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). As with a Rule 12(b)(6) motion, where "matters outside the pleadings are presented to and not excluded by the court, the motion [for judgment on the pleadings] must be treated as one for summary judgment." Fed. R. Civ. P. 12(d).

Romero's offer of proof confirms that, as a matter of law, he cannot prove *Monell* liability against the County. *Monell* limits municipal liability to instances where the plaintiff's claims are based on one of three theories: (1) that the alleged constitutional injury was "committed … pursuant to a formal governmental policy or a longstanding practice or custom;" (2) "that the

---

complaints to governmental agencies concerning patient care and safety at [Santa Clara Valley Medical Center]." TAC ¶ 77.

2

individual who committed the constitutional tort was an official with final policymaking authority;" or (3) "that an official with final policymaking authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotation marks and citations omitted). Romero has not alleged that his constitutional harms were either committed or ratified by an "official with final policymaking authority," *see* TAC ¶ 77, and he has not presented any evidence of a formal policy of First Amendment retaliation. Thus, Romero may only prevail on his *Monell* claims if he is able to prove that it is more likely than not that his alleged constitutional injuries were committed pursuant to an improper practice or custom.

Romero's offer of proof does not provide a sufficient basis from which a jury could reach that conclusion. The offer consists of evidence regarding five Santa Clara Valley Medical Center ("SCVMC") employees who, like Romero, were allegedly retaliated against by hospital supervisors after speaking out on matters of public concern. Offer 1-13. As discussed in more detail below, two of the employees – Kai Ihnken and Geeta Singh – may not testify at trial because Romero failed to timely disclose their identities to defendants. *See* Fed. R. Civ. P. 37(c)(1). The other three employees are Dr. Jana Dolnikova, certified registered nurse anesthetist (CRNA) Richard Hughes, and Dr. Carla Schnier. Offer 2-10. Between 2008 and 2011, Dolnikova made various complaints regarding patient safety and a hostile work environment at SCVMC, and participated in the County's investigation of Romero's complaints. Offer 2-5. Her patient care was subjected to multiple "premeditated sham peer reviews" during that period. *Id.* Between 2009 and 2011, Hughes complained about billing irregularities and deficient patient care in the anesthesiology department, and protested the manner in which a peer review of Romero's patient care was conducted. Offer 5-7. His patient care was peer reviewed at least once during that period, and he was removed from the ward where he had been working after participating in the same investigation of Romero's complaints which Dolnikova participated in. *Id.* Schnier complained about the on-call schedule and a hostile work environment in the anesthesiology department, but there is no evidence of any adverse employment actions taken against her. Offer 7-8.

The sum of Romero's *Monell* evidence is that over the course of three years, he and two other SCVMC employees have been subjected to a smattering of adverse employment actions – primarily peer reviews – as a result of their First Amendment protected activity. This falls short of showing a practice or custom for the purposes of *Monell* liability. Under Ninth Circuit precedent, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The alleged misconduct must constitute the "standard operating procedure" of the municipal entity. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010); *see also, Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992) ("[The] discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policymaking officials."). A record that reveals an "ad hoc practice" that was "varied and inconsistent" with regard to the alleged constitutional violations is not sufficient to prove a *Monell* claim. *Trevino*, 99 F.3d at 919-920. "When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Id.*

The occurrences demonstrated by Romero's evidence do not rise beyond the level of "isolated or sporadic incidents." *Trevino*, 99 F.3d at 918. At most, Romero has presented evidence from which a jury could infer the existence of an "ad hoc practice," varied and inconsistent, that resulted in his constitutional injuries. *Id.* at 919-20. But that is not enough. *Id.* Romero makes no effort to show the total number of SCVMC employees who have been retaliated against pursuant to the alleged custom, or what percentage of the total number of SCVMC peer reviews have been retaliatory in nature. *See Sorlucco*, 971 F.2d at 870 (holding that plaintiff's and other witness's testimony regarding her own adverse treatment, in conjunction with statistical evidence showing disparate treatment of male and female employees, was sufficient to support a jury finding of discriminatory custom). He presents no statistical analysis or expert testimony. *See id.* Nor does he offer testimony from any SCVMC administrators corroborating that the alleged custom in fact exists. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1147-48 (9th Cir.

4

2005) (evidence that several individuals had been barred from an area until they removed certain buttons and stickers, combined with testimony from the supervising police officer that the city would not allow "demonstrations" in the area, was sufficient to create a triable issue of fact as to whether the city had an unconstitutional practice or custom of suppressing certain political speech). Statistical analysis, expert testimony, or admissions from government officials is not always required to prove improper custom. Here, however, Romero's evidence of the allegedly adverse employment actions taken against only three SCVMC employees, standing alone, is too limited and scattered to prove a custom "so permanent and well-settled" as to support *Monell* liability against the County. *Monell*, 436 U.S. at 691; *see also, Pankey v. City of Concord*, No. 06-cv-03737-JCS, 2007 WL 2253401, at *22-23 (N.D. Cal. Aug. 2, 2007) (granting summary judgment for the city; holding that "[p]laintiff's three arrests over the course of four years, even when viewed in a favorable light, are insufficient as a matter of law to constitute a…practice of constitutional violations"); *Henderson v. City & Cnty. of San Francisco*, No. 05-cv-00234-VRW, 2006 WL 3507944, at *10 (N.D. Cal. Dec. 1, 2006) (plaintiff jail inmates failed to demonstrate a triable issue of fact on *Monell* liability, despite alleging that defendant sheriff deputies had used excessive force on six separate occasions over a year long period and presenting evidence of 18 additional grievances submitted by other jail inmates reporting similar misconduct).

Both parties have had multiple opportunities to be heard on this matter – through the briefing on defendants' motion for clarification, at the initial pretrial conference on September 22, 2014, and again at the final pretrial conference on October 3, 2014. Accordingly, judgment on the pleadings is GRANTED for defendants' on Romero's *Monell* claims, and the *Monell* allegation is STRUCK from the third cause of action in Romero's third amended complaint. Because this disposes of Romero's *Monell* claims, defendants' motion for clarification is DENIED AS MOOT.[2]

---

[2] In addition to the argument regarding *Monell* liability, the motion for clarification includes an argument that defendants are immune under certain California and federal statutes providing qualified immunity to members of peer review bodies for tort liability arising from peer review activities. Dkt. No. 143. The statutes are California Civil Code section 43.7(b), California Government Code section 815.2(b), and 42 U.S.C. § 11111(a). *Id.* This portion of the motion for clarification is also DENIED, not because it is moot, but because it is procedurally improper. Defendants do not identify any procedural basis for the motion, and the Court construes it as either a motion for reconsideration under Federal Rule of Civil Procedure 59(e) or a motion for relief

Absent the *Monell* allegation, the third cause of cause of action remains pending against the four individual defendants, Adella Garland, Dolly Goel, Bridget Philip, and Friedrich Moritz. TAC ¶¶ 76-83. However, defendants assert, and Romero does not dispute, that Adella Garland and Dolly Goel did not participate in the peer reviews of Romero's patient care. *See* Dkt. No. 143 at 5. There are also no allegations in the third amended complaint that Garland and Goel were involved in those peer reviews. Given that the summary judgment order in this case limited the scope of Romero's remaining claims to retaliation in the form of peer reviews, *see* Dkt. No. 117 at 17-23, I see no reason for Garland and Goel to still be named as defendants. When asked at the final pretrial conference, Romero could not provide any justification either. Accordingly, Adella Garland and Dolly Goel are DISMISSED WITH PREJUDICE. Romero's third cause of action, for First Amendment retaliation under 42 U.S.C. § 1983, remains pending only against defendants Bridget Philip and Friedrich Moritz.

## II.  UNDISCLOSED WITNESSES

On September 22, 2014, the same day as the initial pretrial conference, Romero filed a supplemental witness list disclosing the names of six additional witnesses who may be called to testify at trial. Dkt. No. 151. Defendants filed objections the next day, arguing that three of the six new witnesses – Kai Ihnken, Geeta Singh, and Thressa Walker – had not been disclosed previously. Dkt. No. 153. Romero did not file a response.

Under Federal Rule of Civil Procedure 37(c)(1), a party who "fails to provide information…as required by Rule 26(a) or (e)…is not allowed to use that information…to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The party whose evidence may be excluded has the burden of proving that its failure to disclose was substantially justified or is harmless. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012).

---

under Rule 60(b)(6). Defendants filed the motion approximately two months after the summary judgment order was entered, long after the twenty-eight day deadline for motions for reconsideration had passed. Fed. R. Civ. P. 59(e). Defendants do not even assert, let alone demonstrate, that this case presents the sort of "extraordinary circumstances" justifying Rule 60(b)(6) relief. *See Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 666 (9th Cir. 1997).

Romero has not offered any reason why his failure to timely disclose the three witnesses was either substantially justified or is harmless. Perhaps this is because, as Romero conceded at the final pretrial conference, the testimony of the three witnesses is only relevant to Romero's *Monell* claims, which are no longer part of this case. Whatever the reason, Romero has not carried his burden, and defendants' objections to the testimony of Kai Ihnken, Geeta Singh, and Thressa Walker are SUSTAINED. Those witnesses will not be allowed to testify at trial.

### III.     MOTION TO QUASH SUBPOENA

On October 2, 2014, defendants moved to quash the subpoena Romero served on Jeffrey Smith, the County Executive of Santa Clara County, compelling Smith to testify at trial. Dkt. No. 162. Smith is not a party to this action, and there is no indication that he has any personal knowledge of the facts underlying Romero's claims.

Federal Rule of Civil Procedure 45(d)(3)(A)(iv) requires a court to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "On a Rule 45 motion to quash a subpoena, the moving party has the burden of persuasion, but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Pers. Audio LLC v. Togi Entm't, Inc.*, No. 14-mc-80025-RS (NC), 2014 WL 1318921, at *2 (N.D. Cal. Mar. 31, 2014); *see also, EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 12-cv-80082-LHK (PSG), 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012) (same).

Romero conceded at the final pretrial conference that Smith's testimony, like the testimony Kai Ihnken, Geeta Singh, and Thressa Walker, is only relevant to Romero's *Monell* claims. With those claims dismissed, Romero cannot show the relevance of Smith's testimony. Accordingly, the motion to quash is GRANTED.

### CONCLUSION

For the reasons discussed above, IT IS HEREBY ORDERED:

(1) Judgment on the pleadings is GRANTED for defendants on Romero's *Monell* claims. The *Monell* allegation is STRUCK from the third cause of action in Romero's third amended complaint.

(2) Defendants' motion for clarification is DENIED AS MOOT.

(3) Defendants Adella Garland and Dolly Goel are DISMISSED WITH PREJUDICE.

(4) Defendants' objections to the testimony of Kai Ihnken, Geeta Singh, and Thressa Walker are SUSTAINED. Those witnesses will not be allowed to testify at trial.

(5) Defendants' motion to quash the subpoena served on Jeffrey Smith is GRANTED.

**IT IS SO ORDERED**.

Dated: October 5, 2014

_____
WILLIAM H. ORRICK
United States District Judge